**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NANCY MURRAY,** | ) | **CASE NO.1:10CV1367** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **THE FIDELITY AND DEPOSIT COMPANY OF MARYLAND** | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon the Cross-Motions for Summary Judgment filed by Plaintiff and Defendant regarding the scope of Defendant's potential liability under a surety bond. For the following reasons, the Court GRANTS Defendant's Motion for Summary Judgment (ECF DKT # 36) and DENIES Plaintiff's Motion for Summary Judgment (ECF DKT # 37).

## I. BACKGROUND

On October 31, 2012, the parties filed cross-motions for summary judgment on the issue of the scope or limit of Defendant's liability, if any, under a surety bond. The surety bond, No. LPM3012608 00, involves three parties: (1) the principal debtor, Sunset Mortgage ("Sunset"); (2) the corporate surety, the Fidelity and Deposit Company of Maryland ("F&D"); and (3) the obligee, the Ohio Superintendent of Financial Institutions. (ECF DKT # 36-2). The surety bond is intended to benefit a third-party buyer, in this case a Sunset customer, for any injury caused by a Sunset violation of O.R.C. § 1322.01 to 1322.12.

The surety bond became effective on May 1, 2002, with an original expiration date of April 30, 2003. The stated penal sum on the bond was $170,000. Each year, at the end of April, "continuation certificates" were signed, purporting to extend the coverage of Bond No. LPM3012608 00 for another year. This continued through the last certificate, signed on April 28, 2006, which sought to extend the coverage of Bond No. LPM3012608 00 through May 1, 2007, with a stated penal sum of $150,000. (ECF DKT # 36-3). Each continuation certificate was accompanied with a new premium payment. *Id.* During the period between May 2002 and May 2007, a number of "Riders" were signed increasing or decreasing the penal sum of Bond No. LPM3012608 00. *See, e.g.*, ECF DKT # 36-5. The penal sum varied from $170,000 at the start, to a high of $420,000 in April 2006, and then down to $150,000 in February 2007 until the expiration of the bond. The reason for this variance is unclear, but Ohio law requires mortgage brokers such as Sunset to have a bond at all times that is at least $50,000 plus $10,000 for each new branch.

Because the context of the language used in the relevant documents is important, the Court must reference the entire documents, particularly the surety bond (ECF DKT # 36-2), the final continuation certificate (ECF DKT # 36-3), and the final rider (ECF DKT # 36-5). Some aspects of these documents, however, are important to highlight. While the surety bond itself is numbered LPM3012608 **00**, the continuation certificates change the very last digit. For example, the final certificate is numbered No. LPM3012608 **03**. Each continuation certificate, however, specifically references Bond No. LPM3012608 00 and states that the parties "do hereby continue said bond in force for the further term of one year." In addition, they state:

> PROVIDED, however, that **said bond, as continued hereby**, shall be subject to all its terms and conditions, except as herein modified,

> and that the **liability** of the said Fidelity and Deposit Company of Maryland under said bond and any and all continuations thereof **shall in no event exceed in the aggregate the above named penalty**, and that this certificate shall not be valid unless signed by said Principal.

(ECF DKT # 36-3) (emphasis added). Similarly, each rider states that it is "[t]o be attached to and form a part of Bond No. LPM3012608 00." The riders also state that the "liability of the Surety under the attached bond and the attached bond as mended by this rider **shall not be cumulative**." (ECF DKT # 36-5) (emphasis added).

Plaintiff argues that the bond(s) are cumulative in nature; and because of that, Defendant is potentially liable for up to $1,424,970.43. Defendant, on the other hand, argues that the bond is continuous in nature; and that since the bond expired when the penal sum was $150,000, its potential liability is limited to that penal sum.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if the pleadings, depositions, documents, electronically stored information, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). These same rules apply when the parties have filed cross-motions for summary judgment. *Westfield Ins. Co. v. Tech Dry Inc.*, 336 F. 3d 503, 506 (6th Cir. 2003). For purposes of the instant motions, there are no genuine issues of material fact, and the conclusions drawn are based on these undisputed facts and the law.

## III. LAW AND ANALYSIS

The main question presented by the parties is whether the surety bond is cumulative or continuous in nature. If the bond is continuous, then the surety's liability under it, regardless of

how long the bond goes on, is limited to the stated penal sum and may not be aggregated from year-to-year. If the bond is cumulative, then the surety's liability may be aggregated from year-to-year, and Plaintiff could recover up to the penal sum for each registration period under the bond and its continuations.

Plaintiff argues that the bond is cumulative because (1) all bonds under Ohio Mortgage Brokers Act ("OMBA"), O.R.C. § 1322.05 are supposed to be cumulative; (2) the bond has the "hallmarks" of a cumulative bond; and (3) the continuation certificates are for separate periods of time and list different bond numbers. Defendant, on the other hand, argues that the bond is continuous because (1) the plain, unambiguous language of the documents in question say it is continuous, and (2) the OMBA does not require bonds to be cumulative.

There is little relevant case law on this issue, and none of it is controlling. Because of this, the Court must first determine how to interpret the bond and related documents. Then, if necessary, the Court must determine whether the OMBA requires bonds to be cumulative, as Plaintiff argues. The bond, the continuation certificates, and the riders must then be read in light of the statute, if necessary, to determine whether it is continuous or cumulative. Based on a review of these documents, it is clear that F&D's liability under Bond No. LPM3012608 00 and all its continuation certificates is continuous, and must not exceed the penal sum of $150,000 found on the last rider.

**A. The Surety Bond Must be Read in the Context of the OMBA**

In order to establish the scope of liability, if any, the Court must determine how to interpret a surety bond. Defendant, citing to numerous cases, argues that the interpretation of a surety bond must be focused on the "four corners" of the bond. Plaintiff looks to O.R.C. §

1322.05 in interpreting its scope of liability.

Defendant cites to *St. Paul Fire & Marine Ins. Co. v. Indus. Comm'n of Ohio*, among others, where the Court held that its analysis of a bond "must *encompass* the 'four corners' of the document." 30 Ohio St. 3d 17, 20 (1987) (emphasis added). Defendant has not shown that the analysis must be *limited* to the "four corners" of the bond. In fact, one of the cases cited by Defendant even states that "[a] bond is a contract and, *in the absence of some controlling statute*, is to be construed according to the fair import of the language used." *Dean v. Seco Elec. Co.*, 35 Ohio St. 3d 203, 205 (1988) (emphasis added) (quoting *Cusack v. McGrain* 136 Ohio St. 27 (1939)).

The surety bond is governed by O.R.C. § 1322.05, which is "a remedial statute and is 'designed in part to protect mortgage borrowers from wrongful conduct by mortgage brokers.'" *Guth v. Allied Home Mortg. Capital Corp.*, 2008-Ohio-3386, at ¶41 (Ohio Ct. App. July 7, 2008). "Remedial laws and all proceedings under them shall be liberally construed in order to promote their object." O.R.C. § 1.11. As Plaintiff has correctly pointed out, the surety bond in question must be construed not just within its "four corners," but also by referencing the OMBA and liberally construing it to achieve its purpose.

**B. Bonds Under the OMBA Are Not All Cumulative in Nature**

Plaintiff believes that all surety bonds under O.R.C. § 1322.05 must be cumulative, while Defendant argues otherwise. Numerous cases from other jurisdictions regarding whether surety bonds are cumulative or continuous have been referenced by both parties. Because these cases are based on dissimilar facts and statutes, they are unhelpful and will not be addressed. Each party did, however, find at least one case from within Ohio, regarding surety bonds and the

question of whether they are continuous or cumulative. Defendant looks to *Rankin v. US Fid. & Guar. Co.*, an Ohio Supreme Court case from 1912. Since this was decided many decades before the adoption of O.R.C. § 1322.05, its usefulness to the Court's analysis is limited. Plaintiff points to a Lorain County Court of Common Pleas decision, *Hill v. Moneytree of Ohio, Inc.*, which held that all surety bonds under O.R.C. § 1322.05 are cumulative in nature. Lorain C.P. No. 06-CV-148815 (Jan. 11, 2012). That holding, however, is not controlling. Nor does the Court find *Hill* persuasive. Thus, the Court must look at O.R.C. § 1322.05 itself, as well as the Ohio Administrative Code for guidance.

Nothing in the plain language of O.R.C. § 1322.05 suggests that all bonds under it must be cumulative. In fact, O.R.C. § 1322.05(A)(1) expressly declares that "the aggregate liability of the corporate surety for any and all breaches of the conditions of the bond shall not exceed the penal sum of the bond." Moreover, nowhere does the statute expressly limit bonds to one year periods. "Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise." *Caminetti v. United States*, 242 U.S. 470, 485 (1917). Even assuming there is ambiguity, statutory interpretation rejects the idea that all § 1322.05 bonds must be cumulative in nature.

Plaintiff first argues that language in O.R.C. § 1322.05(C) suggests that bonds under § 1322.05 must be cumulative. This same language was quoted by the *Hill* opinion in its holding that "every surety bond required by R.C. 1322.05 is cumulative in nature." *Id.* The language in question states that:

> [w]henever the penal sum of the corporate surety bond is reduced by one or more recoveries or payments, the registrant shall furnish a new or additional bond under this section, so that the total or aggregate penal sum of the bond or bonds equals the sum required by this

> section, or shall furnish an endorsement executed by the corporate surety reinstating the bond to the required penal sum.

O.R.C. § 1322.05(C). The Court in *Hill* believed that this language meant that bonds under § 1322.05 must be cumulative, and reasoned that:

> the total amount paid by the bond(s) for the broker's violations during a one-year period of registration may exceed the total or aggregate penal sum of the bond(s) statutorily required of the broker for that period as a result of multiple bond claims reducing the available amount of the bond(s) and the broker then replenishing the bond(s) to the total or aggregate penal sum required by law.

*Hill*, Lorain C.P. No. 06-CV-148815.

To interpret this to mean that all bonds must be cumulative is to ignore the plain meaning of § 1322.05(C). The purpose of this section is to ensure that at all times a mortgage broker has a bond that meets the amount required by the OMBA. There is no indication that simply because a mortgage broker must have bonds with a certain penal sum at all times, a person such as Plaintiff may recover in excess of the penal sum. Again, the language of O.R.C. § 1322.05(A)(1) expressly says otherwise. The Court must look at "the language and design of the statute as a whole" in interpreting the plain meaning of the statutory language. *United States v. Meyers*, 952 F. 2d 914, 918 (6th Cir. 1992) (citing *Sullivan v. Everhardt*, 494 U.S. 83 (1990)). To interpret § 1322.05(C) to mean that all bonds must be cumulative, which alone is a stretch, becomes impossible when considered with § 1322.05(A)(1).

When the Court considers § 1322.05(A)(1) in light of the Ohio Admin. Code 1301:8-7-14, Plaintiff's interpretation is further discredited. See *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984) ("such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute"). "A bond may

be issued for a period of more than one registration period, as long as the coverage is continuous and does not expire until the end of a registration period." O.A.C. 1301:8-7-14(B)(4). A surety bond's liability can be continuous since a bond may be issued for more than one year, and under § 1322.05(A)(1), the aggregate liability of the bond cannot exceed the penal sum. If there is a three year bond and violations during each of those years, for example, the aggregate liability under that single bond is still limited to the penal sum of the bond.

Plaintiff argues, based on the *Hill* opinion, that because the term of a bond must coincide with registration periods, which are one-year periods, this shows an intention on behalf of the authors of the OMBA to require cumulative liability from year-to-year. This completely ignores the language from O.A.C. 1301:8-7-14(B)(4), which is designed to prevent any lapses in coverage between registration periods. *See* Ohio Consumer Law § 24:8 ("[e]ssentially, the registrant cannot allow the coverage to lapse")[1].

There is simply no language in § 1322.05 that, when considered with the statute as a whole, indicates that bonds *must* be cumulative. In fact, there is no language to indicate that § 1322.05 has a preference for either cumulative or continuous liability. The language pointed to by Plaintiff simply indicates that all mortgage brokers must have bonds with penal sums that meet the statutorily required amount, even after a recovery is made. That is the plain reading of the statute. The Court would be troubled if the legislature intended to require cumulative liability in the OMBA, but decided not to include clear, unambiguous language to that effect; and instead, couched it in language more reasonably interpreted to require something else. The

[1]For a more thorough discussion on the interpretation of this language, as well as the competing arguments as to whether § 1322.05 bonds are cumulative or continuous, see Oh. Consumer L. § 24:8.

Court would be further troubled considering the express language limiting a corporate surety's aggregate liability to the penal sum and allowing bonds to be for more than one year. Nothing in the plain meaning of § 1322.05 requires all surety bonds to be cumulative.

**C. The Surety Bond is Continuous in Nature**

Having established that bonds under § 1322.05 are not required to be cumulative, the Court must look at the "four corners" of the surety bond in question. Despite Plaintiff's admirable efforts in arguing otherwise, the bond in question is plainly continuous in nature. Ambiguity should be settled against an insurer such as a surety corporation, *Faruque v. Provident Life & Acc. Ins. Co.*, 31 Ohio St. 3d 34, 38 (1987), but there is no ambiguity in the bond to settle against Defendant. The bond, while originally for a one-year period, was continued by several continuation certificates which state:

> PROVIDED, however, that **said bond, as continued hereby**, shall be subject to all its terms and conditions, except as herein modified, and that the **liability** of the said Fidelity and Deposit Company of Maryland under said bond and any and all continuations thereof **shall in no event exceed in the aggregate the above named penalty**, and that this certificate shall not be valid unless signed by said Principal.

(ECF DKT # 36-3) (emphasis added). As Plaintiff has pointed out, the Court must read in the language of the statute in addition to considering the "four corners." These continuation certificates show a clear, unambiguous intention of the parties to continue the bond for another year, in compliance with O.R.C. § 1322.05(A)(1), 1322.05(C), and O.A.C. 1301:8-7-14(B)(4); and to limit the aggregate liability of the bond to its penal sum, as required by O.R.C. § 1322.05(A)(1). Further, each rider expressly declares that "the liability of the Surety under the attached bond and the attached bond as mended by this rider shall not be cumulative." Thus, without any other prior recoveries on the bond, the maximum recovery is the stated penal sum

for any violations that occurred while the bond was in force.

Plaintiff makes a number of other arguments as to why the Court should interpret this bond as cumulative. For one, in Plaintiff's Response in Opposition to Defendant's Motion on the Scope or Limit of Defendant's Liability (ECF DKT # 40), Plaintiff points out that the continuation certificates have separate periods of coverage and different bond numbers. This, Plaintiff argues, is a "hallmark" of a cumulative bond. See *Columbia Hosp. v. U.S. Fid. & Guar. Co.*, 188 F. 2d 654, 656 (D.D.C. 1951); *Santa Fe Gen. Office Credit Union v. Gilberts*, 299 N.E. 2d 65, 69 (Ill. App. Ct. 1973); *A.B.S. Clothing Collection, Inc. v. Home Ins. Co.*, 41 Cal. Rptr. 2d 166, 168 (Cal. Ct. App. 1995).

Plaintiff cites to no case within Ohio that has found that rule, aside from *Hill*, and so this rule is not controlling. Further, some of the cited cases, when read fully, work against Plaintiff's position. In *A.B.S. Clothing*, the Court noted a rule has developed over the years that a bond renewal is a separate and distinct contract for the period of time covered, "unless it appears to be the intention of the parties as evidenced by the provisions thereof that such policy or bond and the renewal thereof shall constitute one continuous contract." *A.B.S. Clothing*, 41 Cal. Rptr. 2d at 168; *see* also *City of Miami Springs v. Travelers Indem. Co.*, 365 So. 2d 1030, 1032 (Fla. Ct. App. 1978); *Krey Packing Co. v. Employer's Liability Assur. Corp.* 127 S.W. 2d 780, 782 (Mo. Ct. App. 1939); *Great American Indem. Co. v. State*, 229 S.W. 2d 850, 853 (Tx. Ct. Civ. App. 1950). Here, the continuation certificates and riders clearly evidence an intention by the parties to have one continuous contract; and without any controlling rule otherwise, the Court will hold the parties to the bond to their word.

Plaintiff's separate bonds argument is undermined by her Memorandum in Support of

Plaintiff's Motion for Summary Judgment on the Scope or Limit of Defendant's Liability under the Surety Bond references the bond's "five-year term." (ECF DKT # 38 at 5). Plaintiff changed their argument from one document to another. Plaintiff first seems to argue that the single bond is cumulative, and then later argues that they are all separate bonds. Even though the slightly different bond numbers on the continuation certificates indicates separate bonds, the clear language within the certificates outweighs that fact. Twice, in separate paragraphs, each certificate says it is continuing the original bond. The language of each certificate, looked at as a whole, unambiguously indicates it is merely continuing the same bond for an additional year, and all of the riders refer back to the original bond. *Compare* with *Rankin*, 86 Ohio St. at 277 (a bond and its continuations, if obviously connected, are to be construed as though the original bond was executed for all periods under the documents).

The plain language of the bond, its continuation certificates, and its riders all indicate they are meant to be one, continuous bond, and that F&D's liability must not be aggregated. When reading in O.R.C. § 1322.05, which Plaintiff noted the Court must do, the evidence is even stronger that the bond is continuous and not cumulative, since the statute expressly forbids surety liability exceeding the penal sum and allows bonds to cover multiple registration periods. While the statute's purpose is to protect the consumer, and Courts must construe it liberally to achieve this purpose, that does not mean this Court must deprive Defendant of its reasonable expectations based on the clear language of the bond. This bond was intended to be, and is, a continuous bond, not subject to any aggregation of liability from year-to-year.

**<u>D. Scope of Defendant's Liability</u>**

O.R.C. § 1322.05(D) requires that "the liability for any act or omission that occurs

during the term of the corporate surety bond shall be maintained and in effect for at least two years after the date on which the corporate surety bond is terminated or canceled." The bond terminated on April 30, 2007 when Sunset's registration was terminated. The penal sum of the bond at that time was $150,000. *See* ECF DKT # 36-4. Defendant's liability for any and all violations that occurred during its five-year period is limited to $150,000.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment (ECF DKT # 36) and DENIES Plaintiff's Motion for Summary Judgment (ECF DKT # 37).

**IT IS SO ORDERED.**

**s/ Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**

Dated: August 16, 2013