UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **NANCY MURRAY, etc.,** ) | **CASE NO.  1:10CV1367** |
| ) | |
| Plaintiff, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| **FIDELITY AND DEPOSIT COMPANY** ) | |
| **OF MARYLAND,** ) | |
| Defendant. ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #53) of Defendant, Fidelity and Deposit Company of Maryland ("F & D"), for Summary Judgment.  For the following reasons, the Motion is denied.

**I. BACKGROUND**

On September 4, 2009, Plaintiff, Nancy Murray, as Class Representative, filed a Complaint in Lorain County Common Pleas Court (Lorain CP No. 09-163842), for money judgment and declaratory and injunctive relief against Defendants, F & D and The Ohio Superintendent of Financial Institutions.

In a prior lawsuit (Lorain CP No. 07-CV-152874) a judgment, in the amount of $66,625,000, was entered in favor of a class of customers of Sunset Mortgage represented by Murray, and against Sunset Mortgage for violations of the Ohio Mortgage Broker Act, particularly R.C. § 1322.062.  Murray alleges, in the second suit, that Sunset Mortgage purchased a Surety Bond from F & D, effective May 1, 2002, covering its mortgage-brokering activities in Ohio; and that the Bond covers the customers found to be injured by

Sunset's violations in the prior lawsuit. The Judgment against Sunset Mortgage remains wholly unsatisfied. Murray alleges that the Bond obligates F & D to pay the Bond's penal sum toward satisfaction of the Judgment. Murray further alleges that the F & D Bond is a written contract, of which Murray and the class members are statutorily-intended beneficiaries. Murray asks the Court for a declaration of the rights, status or other legal relations under the Bond; and an injunction, ordering F & D to pay the penal sum set forth in the Bond.

On or about November 13, 2009, F & D filed its Answer in Common Pleas Court. F & D's defenses include: lack of standing; the statute of limitations bar per R.C. § 1322.05(D); a contractual limitation period in the Bond; insufficient allegations to maintain a class action against F & D; insufficient allegations to support injunctive relief; limited monetary liability per the Bond; and F & D is not bound by the judgment in Lorain CP No. 07-CV-152784.

After some months of litigation in Common Pleas Court, Murray voluntarily dismissed the Ohio Superintendent of Financial Institutions as a Defendant. The Notice of Removal to this Court followed, based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy, exclusive of interest and costs, exceeds $75,000. Moreover, Murray is an Ohio citizen and the remaining Defendant, F & D, is a corporation, with its principal place of business in Maryland.

Subsequently, Murray filed a Motion to Remand (ECF DKT #5) to state court, arguing that the Court lacked subject matter jurisdiction, or alternatively, that the Court should abstain, rather than intrude upon Ohio's sovereignty on a question of public concern. The

Court denied the Motion to Remand, finding that it possessed jurisdiction and declining to abstain from deciding whether a class, which in a prior action was certified under Ohio Civil Rule 23 and was awarded a judgment *qua* class, can bring a second action against its judgment-debtor's surety to collect on the judgment without seeking re-certification.

On October 31, 2012, the parties filed Cross-Motions for Summary Judgment on the issue of the scope or limit of F & D's liability, if any, under the Surety Bond.  The Bond, No. LPM3012608 00, involves three parties: (1) the principal debtor, Sunset Mortgage; (2) the corporate surety, F & D; and (3) the obligee, the Ohio Superintendent of Financial Institutions.  (ECF DKT # 36-2).  The Bond is intended to benefit a third-party buyer, in this case a Sunset Mortgage customer, for any injury caused by a violation of  R.C. §§ 1322.01 to 1322.12.  The Bond became effective on May 1, 2002.  During the period between May 2002 and May 2007, a number of "Riders" were executed, increasing and decreasing the penal sum of the Bond.  The penal sum varied from $170,000 at the start, to a high of $420, 000 in April 2006, and then down to $150,000 in February 2007 until the expiration of the Bond.  The reason for this variance is unclear, but Ohio law requires mortgage brokers such as Sunset to have a bond at all times that is at least $50,000 plus $10,000 for each new branch.  Murray argued that the Bond(s) are cumulative in nature; and because of that, F & D is potentially liable for up to $1,424,970.43.  F & D, on the other hand, argued that the Bond is continuous in nature; and that since the Bond expired when the penal sum was $150,000, its potential liability is limited to that penal sum.

The Court held that the Bond was intended to be, and is, a continuous bond, not subject to any aggregation of liability from year to year.  The Bond expired on April 30, 2007

when Sunset's registration was terminated and when the penal sum was $150,000. Pursuant to R.C. § 1322.05(D): "[T]he liability for any act or omission that occurs during the term of the corporate surety bond shall be maintained and in effect for at least two years after the date on which the corporate surety bond is terminated or canceled." The Court determined that F & D's liability for any and all violations that occurred during the five-year period is limited to $150,000.

On September 13, 2013, the Court denied Murray's request for an interlocutory appeal; and on August 26, 2014, the Court denied Murray's Motion for Reconsideration of the Dollar Amount of Defendant's Potential Liability.

In its instant Motion for Summary Judgment, F & D argues that the state court judgment is not enforceable by the Class against F & D in this action. F & D also contends that Murray cannot provide evidence that she, or any Class Member, was injured by Sunset Mortgage's violation of R.C. § 1322.062; or that F & D denied or failed to act on a duly-presented, valid claim.

## II. LAW AND ANALYSIS

### Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.  This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

As the Court previously noted, on May 14, 2008, the Lorain County Common Pleas Court entered judgment in the amount of $66,625,000 in favor of a certified class of customers of Sunset Mortgage represented by Murray, and against Sunset Mortgage for violations of the Ohio Mortgage Broker Act, particularly R.C. § 1322.062.

Once the certification decision was made, "the class of unnamed persons described in the certification acquired a legal status separate from the interest" of the representative, Murray.  *Sosna v. Iowa*, 419 U.S. 393, 399 (1975).

Neither Murray nor F & D disputes that F & D provided a Bond to its Principal,

Sunset Mortgage, effective May 1, 2002 until cancellation, to benefit Sunset Mortgage customers for any injury caused by Sunset's violation of R.C. §§ 1322.01 to 1322.12. (ECF DKT #36-2). By the terms of the Bond, the Principal and the Surety bound themselves, *jointly and severally*, for the exclusive benefit of any injured Sunset customer. (Emphasis added). *Id*. The Bond provides further: "Liability for any act or omission by the Principal that occurs during the term of this bond shall be maintained and in effect for at least two years after the date on which the surety bond is terminated or cancelled." *Id*. Both Murray and F & D agree that Sunset Mortgage went out of business as a licensed mortgage broker on April 30, 2007.

Under Ohio law, res judicata is comprised of two concepts: (1) claim preclusion; and (2) issue preclusion (collateral estoppel). The second precept, collateral estoppel, "precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 121 Ohio St.3d 526, 530 (2009) (internal citations omitted). As a general rule, for collateral estoppel to apply, Ohio law requires a mutuality of parties. There is an exception, however, "for those persons in privity with a party to the first action." *Id*. at 531.

In the instant matter, a contractual relationship exists since neither party contests that F & D was the Surety for Sunset Mortgage. F & D entered into a Bond Agreement with Sunset Mortgage, and this Bond constitutes a contract. (ECF DKT #36-2). *Cusack v. McGrain*, 136 Ohio St. 27, 29 (1939). Thus, there is privity between Sunset Mortgage and F & D for collateral estoppel purposes. *Brown v. Dayton*, 89 Ohio St.3d 245, 248 (2000).

F & D asserts that it was not in privity with Sunset Mortgage for purposes of the state lawsuit because the Bond expired once Sunset ceased operating as a licensed broker on April 30, 2007. (ECF DKT #53 at 21). However, F & D's argument is defeated by the Bond's express terms. Sunset Mortgage and F & D bound themselves jointly and severally. (ECF DKT #36-2). Moreover, pursuant to the Bond, F & D's liability was "maintained and in effect for at least two years after the date on which the surety bond [was] terminated or cancelled." Therefore, F & D remained jointly and severally liable with Sunset, for the benefit of any injured buyer/customer of the broker, until at least April 30, 2009. The state lawsuit was commenced on September 19, 2007 and the final judgment was entered on May 14, 2008. For all relevant time periods, then, F & D was in privity with Sunset Mortgage by virtue of the Surety Bond.

*Standard Accident Ins. Co. v. Hattie*, 197 N.E. 817 (Ohio App.1935) held that "where the sureties have notice of the suit, and may, or do make defense, the judgment against the principal is conclusive against them." However, "if a person [surety] ... has notice of the pendency of the action and refuses or neglects to appear and avail himself of his rights, he will be concluded by the judgment." *In re Blue's Estate*, 67 Ohio App. 37 (1939).

Here, F & D admits that one of the attorneys for the State Class sent a letter to F & D on April 10, 2008, and provided copies of the Complaint and Amended Complaint. (ECF DKT #53 at 21). A representative of F & D also had a telephone conversation with Class counsel, on or about April 21, 2008, and received an email advising "that Sunset Mortgage and its general partner, co-defendant Avonwood Capital Corporation, are in default of answer, and I anticipate soon moving for a default judgment against both." *Id*. F & D did not

intervene nor take any action in the lawsuit involving its Principal, Sunset Mortgage.  Murray did not join F & D in the state action.  F & D argues that its ability to protect its interests was impaired or impeded, particularly when it was notified of the pending litigation only a month before judgment was entered.

The Court is persuaded by the reasoning in *Swayne v. Capitol Indemnity Corporation*, No. C2-09-CV-0341, 2010 WL 2663209 (S.D.Ohio July 1, 2010).  Following the *Swayne* court's analysis, although it may have been more convenient for F & D to have had notice at the commencement of the suit, it had notice on April 10, 2008, prior to the entry of the final judgment on May 14, 2008.  F & D could have filed a motion to intervene pursuant to Ohio Rule of Civil Procedure 24, but did not.  F & D made no effort to involve itself in the suit, despite notice, until Murray brought this action.  *See Swayne*, 2010 WL 2663209, at *3.

Therefore, the Court concludes that there is privity in this case; and F & D, as Surety, is bound by the Lorain County Common Pleas Court judgment against its Principal, Sunset Mortgage through the operation of collateral estoppel.

F & D makes the additional argument that Murray has failed to produce admissible evidence that she and the Class Members were injured by Sunset Mortgage's violation of the Ohio Mortgage Broker Act, or by F & D's conduct or failure to act in accordance with the Bond's obligations.

Murray asserts that she and the Class Members were injured by Sunset Mortgage's violation of the Ohio statutes governing licensed brokers.  Specifically, Murray testified at her deposition (ECF DKT #50) and by affidavit (ECF DKT #46-1) that she never received from Sunset a mortgage loan origination disclosure statement as mandated by R.C. § 1322.062.  In

its May 14, 2008 Order, the Lorain County Common Pleas Court found Rule 23 commonality and typicality prerequisites were satisfied by the Class and the Class Representative. (ECF DKT #53-1). For its part, F & D counters that any injury Murray suffered was due to the misconduct of her former fiancé who handled the loan transaction. Furthermore, Murray cannot produce a copy of a defective residential mortgage loan origination disclosure statement. (ECF DKT #53 at 15).

First, this Court does not sit as an appellate court reviewing a state court's findings of fact and conclusions of law. More significantly, in a summary judgment analysis, the Court's role is not to weigh evidence or to judge credibility. It is completely within the jury's purview to consider the parties' testimony as to injury, proximate causation and damages.

### III. CONCLUSION

For these reasons, the Court holds that Defendant Fidelity and Deposit Company of Maryland has not shown that it is entitled to judgment as a matter of law. Therefore, its Motion for Summary Judgment (ECF DKT #53) is denied.

**IT IS SO ORDERED.**

                                              **s/ Christopher A. Boyko**
                                              **CHRISTOPHER A. BOYKO**
                                              **United States District Judge**

**Dated:  September 10, 2014**